1

2

3

4

5                        UNITED STATES DISTRICT COURT

6                      NORTHERN DISTRICT OF CALIFORNIA

7

8  CENTURY 21 REAL ESTATE LLC,                No. C-14-4774 EMC

9           Plaintiff,

10     v.                                     **ORDER GRANTING PLAINTIFF'S
                                              MOTION FOR DEFAULT JUDGMENT**

11  REALTYCOMP.COM, *et al.*,
                                              **(Docket No. 20)**

12          Defendants.
    _____/

13

14

15         Plaintiff Century 21 Real Estate LLC (Century 21) "is one of the world's leading franchisors

16  of real estate brokerages." Docket No. 20-12 at ¶ 3. Defendant RealtyComp.com is a former

17  franchisee of Century 21 that sometimes did business as Century 21 ScottKeys Properties or Century

18  21 Scott Keys Properties. *Id.* at ¶ 1; *see also* Docket No. 1 at ¶ 6. Defendants Tjoman Subiono

19  Buditaslim (*a.k.a.* Joe Lim) (hereinafter Lim) and John Scott each signed a personal "Guaranty of

20  Payment and Performance" in connection with RealtyComp's obligations under its Franchise

21  Agreement with Century 21. Docket No. 1 at ¶ 18; *see also* Docket No. 20-17 (Franchise

22  Agreement) at 48-49.

23         After Defendants failed to respond to Century 21's complaint, the Clerk of this Court entered

24  default against the Defendants on December 10, 2014. *See* Docket No. 18. Century 21 thereafter

25  moved this Court for entry of default judgment. *See* Docket No. 20. A hearing was held on March

26  5, 2015. Having considered the Plaintiff's brief and accompanying submissions, the Court hereby

27  **GRANTS** the motion for default judgment.

28

**United States District Court**
For the Northern District of California

1

**United States District Court**
For the Northern District of California

### I.   FACTUAL & PROCEDURAL BACKGROUND

2          On March 16, 2004, Defendant RealtyComp entered into a Franchise Agreement (the

3    Agreement) with Century 21.  Franchise Agreement at  46.  Defendants Lim and Scott each signed

4    the Agreement on behalf of RealtyComp as an "Authorized Officer and Individually."  *Id.*

5          Under the Agreement, RealtyComp became a franchisee of Century 21 as a real estate

6    brokerage business.  Docket No. 20-16 at ¶ 4.  According to the Agreement, Century 21 promised to

7    (among other things) "grant a non-exclusive license to RealtyComp to utilize Century 21 trademarks

8    and [its] marketing system."  *Id.* at ¶ 5.  In return, RealtyComp agreed (among other things) to pay to

9    Century 21 : (1) six percent of its gross revenues as "royalty fees"; and (2) two percent of its gross

10   revenues for a "National Advertising Fund" (NAF).  *Id.*  "RealtyComp also agreed to permit Century

11   21 to audit its books and records at any reasonable time and agreed to pay, with interest, any sums

12   determined to be owing based on [such an] audit."  *Id.*  Defendants Lim and Scott each signed "a

13   Guaranty of Payment and Performance" in favor of Century 21, personally guaranteeing all of

14   RealtyComp's obligations under the Agreement.  *See* Franchise Agreement at 48-49 (providing that

15   each "Guarantor does hereby, jointly and severally, to the extent herein provided, guaranty to

16   CENTURY 21 the prompt payment and performance, when due of all obligations of Franchisee

17   under [the] Franchise Agreement").

18          In addition to the Agreement, Defendants also entered into two "Account Balance

19   Promissory Notes" (the Notes) in the amounts of $13,876.72 and $15,327.80 respectively.  *See*

20   Docket Nos. 20-18, 20-19 (Promissory Notes).  Pursuant to the Notes, the Defendants promised to

21   repay Century 21 the loaned amounts in eleven monthly installments of $500 commencing March 1,

22   2012, with a final balloon payment of $25,128.70 due on February 15, 2013.  Docket No. 20-16 at ¶

23   8.  Upon termination of the Franchise Agreement, the Notes "could be accelerated and [become] due

24   immediately following termination."  *Id.*

25          Finally, Defendant RealtyComp entered into a Security Agreement with Century 21 to secure

26   its obligations under the Franchise Agreement and the Promissory Notes.  *See* Docket No. 20-20

27   (Security Agreement).  The Security Agreement grants Century 21 a security interest in certain

28

2

**United States District Court**
For the Northern District of California

1 collateral of RealtyComp, including "all accounts, accounts receivable, contract rights, leases,

2 furniture . . . movable trade fixtures" and the like. *Id.*; *see also* Docket No. 20-16 at ¶ 10.

3         Sometime around October 2013, Century 21 learned that Defendants had "failed to report on

4 closed transactions and pay fees when due, including royalty and NAF fees, constituting a breach of

5 the [A]greement." Docket No. 20 at 5; *see also* Docket No. 20-16 at ¶¶ 12-13. Pursuant to Section

6 17M of the Agreement, Century 21 sent a "notice of intent to terminate and opportunity to cure"

7 letter to Defendants stating that Defendants were in default, and giving Defendants until December

8 2, 2013, to cure the default by paying $47,217.75 – the amount then due and owing Century 21

9 under the Agreement. Docket No. 20-16 at ¶ 13. Defendants failed to cure the default by December

10 2, 2013. *Id.* at ¶ 14. Consequently, Century 21 "exercised its rights under Sections 8, 9, 17B and

11 17M of the Franchise Agreement to terminate the [A]greement." *Id.* Century 21 sent a

12 "Termination Letter" to Defendants on December 17, 2013. *Id.* That letter advised Defendants that

13 the Agreement was terminated effective December 23, 2013, for "failing to pay fees when due and

14 failing to report on closed transactions." *Id.* As of the date of termination, Century 21 claims that

15 Defendants owed it $59,589.94, "consisting of $49,632.23 in unpaid fees and billings due on the

16 Notes, plus $9,957.71 in lost future profits as set forth in Section 19A of the Franchise Agreement."

17 *Id.* at ¶ 15.

18         Section 18 of the Agreement is entitled "Procedures After Termination," and lays out a

19 number of steps a terminated franchisee must take after its relationship with Century 21 ends. *See*

20 Franchise Agreement at 30-32. For instance, RealtyComp agreed to "[i]mmediately and

21 permanently discontinue the use of all CENTURY 21 Marks . . . [p]romptly destroy, or surrender to

22 [Century 21], all stationary, letterheads, forms, [etc.] . . . containing CENTURY 21 Marks . . . [and]

23 [i]mmediately and permanently discontinue all advertising as a CENTURY 21 franchisee." *See id.*;

24 *see also* Docket No. 20-12 at ¶ 15. According to a Vice President of Customer Relationships for

25 Century 21, one of the "purposes of Section 18 is to prevent the irreparable harm that Century 21

26 will suffer in the event of the continued use of its CENTURY 21® Marks by an unauthorized former

27 franchisee, or hold-over franchisee, of Century 21." Docket No. 20-12 at ¶ 16.

28

United States District Court

For the Northern District of California

1    Century 21 claims that Defendants failed to comply with the requirements of Section 18 after

2   their franchise was terminated.  Inspection reports filed by Century 21 indicate that Defendants were

3   still using Century 21 marks and advertising on January 23, 2014, *see* Docket No. 20-14, and April

4   18, 2014.  Docket No. 20-15.  Consequently, counsel for Century 21 sent Defendants a cease and

5   desist letter on July 18, 2014, reminding Defendants that the Agreement had been terminated and

6   explaining Defendants' contractual promise to "comply with their post-termination obligations

7   including ceasing all further use of the trade name, trademarks, services marks and logos of Century

8   21."  Docket No. 20-1 at ¶ 2.  Apparently, the Defendants did not cease and desist in their use of

9   Century 21's intellectual property, and so counsel for Century 21 sent a second cease and desist

10   letter to Defendants on September 23, 2014.  *Id.* at ¶¶ 2-3.  When this second letter went unheeded,

11   Century 21 filed this lawsuit to enforce the terms of the Agreement.  *See* Docket No. 1.

12    In its complaint, filed on October 27, 2014, Century 21 asks this Court for both a money

13   judgment and injunctive relief consistent with the Defendants' obligations under the relevant

14   contracts.  Specifically, Century 21 asks this Court for the following relief: (1) a monetary judgment

15   in the amount of $99,330.94, which includes amounts due and owing under the Franchise

16   Agreement and Notes, and trebled damages for Defendants' continued trademark infringement; (2)

17   an attorneys' fees award, including costs, in the amount of $9,574.75; and (3) a permanent

18   injunction prohibiting Defendants from further use of Century 21's intellectual property.  Docket

19   No. 20 at 21-21.

20                                      **II.    DISCUSSION**

21   A.    Adequacy of Service of Process

22    As a threshold matter in considering a motion for default judgment, the Court must first

23   "assess the adequacy of the service of process on the party against whom default is requested."

24   *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S.

25   Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).  Fed. R. Civ. P. 4(h)(1) authorizes service upon a

26   corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or

27   general agent, or to any other agent authorized by appointment or by law to receive service of

28   process and – if the agent is one authorized by statute to receive service and the statute so requires –

**United States District Court**

For the Northern District of California

1    by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1).  Rule 4(h)(1) also states

2    that a corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an

3    individual," which, in turn, allows for service "following state law for serving a summons in an

4    action brought in courts of general jurisdiction in the state where the district court is located or

5    where service is made."  Fed. R. Civ. P. 4(e)(1).

6        Under California law, a summons and complaint may be served on a corporation by

7    delivering a copy of the documents: (1) to the person designated as agent for service under certain

8    provisions of the California Corporations Code; or (2) to the "president or other head of the

9    corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a

10   general manager, or a person authorized by the corporation to receive service of process."  Cal. Code

11   Civ. P. § 416.10(a), (b).  A corporation may also be served under California law via "substituted

12   service."  That is,

13              If a copy of the summons and complaint cannot with reasonable
                diligence be personally delivered to the person to be served, . . . a
14              summons may be served by leaving a copy of the summons and
                complaint at the person's dwelling house, usual place of abode, usual
15              place of business, or usual mailing address other than a United States
                Postal Service post office box, in the presence of a competent member
16              of the household or a person apparently in charge of his or her office,
                place of business, or usual mailing address other than a United States
17              Postal Service post office box, at least 18 years of age, who shall be
                informed of the contents thereof, and by thereafter mailing a copy of
18              the summons and of the complaint by first-class mail, postage prepaid
                to the person to be served at the place where a copy of the summons
19              and complaint were left.

20   Cal. Code Civ. P. § 415.20(b).

21       While substituted service is, as a general matter, an easier form of service compared to

22   personal delivery, it is not free of limitations.  Before a party can resort to substituted service,

23   personal service must first be attempted with "reasonable diligence."  California courts have held

24   that "[o]rdinarily, . . . two or three attempts at personal service at a proper place should fully satisfy

25   the requirement of reasonable diligence and allow substituted service to be made."  *Bein v.*

26   *Brechtel–Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1390 (1992).  Also, "[s]ervice must be made

27   upon a person whose relationship to the person to be served makes it more likely than not that they

28   will deliver process to the named party."  *Id.* at 1393 (internal quotation marks omitted).

**United States District Court**

For the Northern District of California

1    The proof of service for the summons and the complaint indicate that the documents were

2    served via substitute service at RealtyComp's principal place of business on November 10, 2014.

3    *See* Docket Nos. 11-13.  Specifically, the documents were served on a Ms. Suhsewin Songkamirin,

4    who the process server described as the "Receptionist/Person Apparently In Charge Thereof."  *Id.*

5    An affidavit of reasonable diligence states that the process server previously attempted to serve

6    RealtyComp on two prior occasions, but Ms. Songkamirin informed the process server that neither

7    individual Defendant was "available at this time."  *Id.*  Substituted service was then completed by

8    mail on November 10, 2014, and the summons and complaint were mailed to RealtyComp's

9    business address.  *Id.*  Identical efforts were made to serve the two individual Defendants in their

10   individual capacities.  *Id.*  The efforts described above are sufficient under California law vis-a-vis

11   substituted service, and therefore the Court finds that service of process on Defendants was properly

12   effectuated.

13   B.      Merits of Motion for Default Judgment

14   As noted above, the Clerk entered default against Defendants on December 10, 2014.  *See*

15   Docket No. 18.  After entry of default, a court may grant a default judgment on the merits of the

16   case.  *See* Fed. R. Civ. P. 55.  "The district court's decision whether to enter a default judgment is a

17   discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A court may consider

18   the following factors in exercising such discretion:

19              (1) the possibility of prejudice to the plaintiff, (2) the merits of
                plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
20              the sum of money at stake in the action, (5) the possibility of a dispute
                concerning material facts, (6) whether the default was due to
21              excusable neglect, and (7) the strong policy underlying the Federal
                Rules of Civil Procedure favoring decisions on the merits.
22

23   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Because default has already been entered

24   in this case, the Court must construe as true all of "the factual allegations of the complaint, except

25   those relating to the amount of damages."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18

26   (9th Cir. 1987).

27   The Court finds that the *Eitel* factors weigh in favor of granting default judgment.  For

28   example, as to the first factor, if the motion for default judgment were to be denied, then Century 21

**United States District Court**
For the Northern District of California

1 would likely be prejudiced as it would be left without a remedy.  *See Walters v. Shaw/Guehnemann*

2 *Corp.*, No. 03-cv-04058, 2004 U.S. Dist. LEXIS 11992, at \*7 (N.D. Cal. Apr. 15, 2004) ("To deny

3 plaintiff's motion [for default judgment] would leave them without a remedy.  Prejudice is also

4 likely in light of the merits of their claims."); *Pepsico, Inc. v. California Security Cans*, 238

5 F.Supp.2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted,

6 Plaintiffs will likely be without other recourse for recovery.").

7          As for the fourth *Eitel* factor, the sum of money at stake in this action is appropriate for

8 resolution on default judgment, particularly because the total amount sought ($108,905.69) is

9 narrowly tailored to Defendants' specific misconduct.  *See Pepsico*, 238 F.Supp.2d at 1176 (stating

10 that "the court must consider the amount of money at stake in relation to the seriousness of

11 Defendant's conduct"); *see also Church Bros., LLC v. Garden of Eden Produce, LLC*, No. 11-cv-

12 04114, 2012 WL 1155656, at \*3 (N.D. Cal. Apr. 5, 2012) ($212,259.21 deemed "modest" and "far

13 less than [the amount] contemplated by the court in *Eitel*"); *Cf.  Eitel*, 782 F.2d at 1472 (dispute over

14 $2,900,000, when considered in light of disputed issues of material facts, supported the court's

15 decision not to enter judgment by default).

16          As to the fifth, sixth, and seventh *Eitel* factors, because Defendants have not filed an answer

17 to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning

18 material facts.  Nor is there any indication that Defendants' default was due to excusable neglect, as

19 Plaintiffs adequately served the complaint at Defendants' business address.  *See* Docket Nos. 11-13.

20 And while public policy favors decisions on the merits, *Eitel*, 782 F.2d at 1472, Defendants' choice

21 not to defend this action renders a decision on the merits "impractical, if not impossible." *PepsiCo*,

22 238 F. Supp. 2d at 1177.

23          The only remaining factors that warrant additional analysis are the second and third *Eitel*

24 factors – the merits of Century 21's substantive claims and the sufficiency of those claims.  To

25 prevail on its breach of contract claims Century 21 must establish four essential elements: "(1) the

26 contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

27 the resulting damages to plaintiff." *Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal. App. 4th

28 1602, 1614 (2011) (citation omitted).  Here, Century 21's complaint properly alleges all of the

United States District Court

For the Northern District of California

1  elements of a breach of contract action.  *See* Docket No. 1 at ¶¶ 61-66.  Indeed, Century 21 has

2  provided significant evidence that Defendants bound themselves to the terms of the Franchise

3  Agreement, Promissory Notes, and Security Agreement.  *See* Docket Nos. 20-17 – 20-20 (filed

4  copies of relevant contracts).  Moreover, Plaintiffs filed signed copies of personal guarantees that

5  provide that Defendants Lim and Scott agreed to be held jointly and severally liable with

6  RealtyComp for any amounts due Century 21 under the relevant agreements.  *See* Franchise

7  Agreement at 48-49.  Moreover, Century 21 alleges that Defendants breached the relevant

8  agreements – and has submitted evidence in support of these allegations – causing Century 21

9  damages.  *See* Docket No. 1.  This Court must accept these allegations as true where the Defendants

10  are in default.  *See TeleVideo Sys., Inc.*, 826 F.2d at 917.  Consequently, Century 21 has successfully

11  stated a claim for breach of contract.

12  Century 21 has similarly stated a sufficient claim for trademark infringement under the

13  Lanham Act.  To prevail on its claim, Century 21 must demonstrate that (1) it has a protected

14  ownership interest in the Century 21 marks, and (2) Defendants' use of the Century 21 marks, or

15  similar marks, is likely to cause consumer confusion, thereby infringing upon Century 21's rights.

16  *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014).  Here, Century 21

17  alleges that it has registered various marks with the United States Patent and Trademark Office,

18  including the word Century 21.  *See* Docket No. 1 at ¶¶ 9-15.  And Century 21 also alleges that

19  Defendants continue to use the Century 21 name, or other similar marks, after the termination of the

20  Agreement, and that such actions have "caused and continues to cause a likelihood of confusion."

21  *See id.* at ¶¶ 35-38.  Thus, Century 21 has successfully stated a claim for trademark infringement.

22  Finally, Century 21 has stated a sufficient claim for permanent injunctive relief prohibiting

23  Defendants from further use of the Century 21 marks or other marks sufficiently similar as to cause

24  consumer confusion.  In order to be entitled to permanent injunctive relief, Century 21 must show:

25  (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

26  damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships

27  between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest

28  would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S.

388, 391 (2006). Here, Century 21 has adequately alleged all four elements of the *eBay* test for a permanent injunction. *See, e.g.*, Docket No. 1 at ¶ 37; Docket No. 20-12 at ¶¶ 2-7, 16-19; *see also PepsiCo.*, 238 F. Supp. 2d at 1178 (granting permanent injunction in Lanham Act case where defendant defaulted). Most importantly, Century 21 has provided testimony that it will suffer irreparable harm if Defendants are allowed to continue to hold themselves out as a Century 21 franchisee when, in fact, they are not. *See, e.g.*, Docket No. 20-12 at ¶ 16. Such testimony is consistent with common sense: if customers who otherwise would use an actual Century 21 brokerage choose instead to use Defendants' brokerage believing it to be an authorized Century 21 location, Century 21 could suffer significant lost profits and harm to its goodwill. *See Presidio Components, Inc. v. American Technical Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) (explaining that finding of lost profits strongly suggests that plaintiff has suffered irreparable injury that can only be remedied by entry of an injunction); *Sennheiser Electronic Corp v. Eichler*, No. CV 12-10809 MMM (PLAx), 2013 WL 3811775, at *10 (C.D. Cal. 2013) (explaining that continued trademark infringement that causes lost profits or otherwise damages "goodwill and business reputation [] will often constitute irreparable injury").[1] Moreover, the fact that Defendants' brokerage is directly competing for customers with actual Century 21 franchisees further supports a finding of irreparable harm. *See generally Presidio Components*, 702 F.3d at 1363 (holding that "[d]irect competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm"). Thus, the Court finds the remaining *Eitel* factors warrant entry of default judgment against Defendants.

---

[1] It is worth noting that Ninth Circuit has observed in an earlier trademark infringement case litigated by Century 21 that "[i]njunctive relief is the remedy of choice for trademark . . . cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1181 (9th Cir. 1988) (affirming permanent injunction prohibiting defendant from using any name or mark "confusingly similar to Century 21's marks and designs in connection with his business") *accord Sennheiser Electronic Corp.*, 2013 WL 3811775, at *10 (explaining that *Century 21* correctly states general principles of equity vis-a-vis trademark law post-*eBay*); *see also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000) (citing *Century 21* for the proposition that a "broad injunction" against trademark infringement is appropriate where the "infringing use is for a similar service")

United States District Court

For the Northern District of California

C.      Damages and Other Relief

Because the Court concludes that default judgment is warranted, it must determine what damages or other relief is appropriate.  Plaintiffs have the burden of "proving up" their damages or the need for other requested relief.  *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit."); *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (noting that "Plaintiff's burden in 'proving up' damages is relatively lenient").

In their motion for default judgment, Century 21 seeks to recover all outstanding amounts due and owing under the Franchise Agreement and Promissory Notes, interest and liquidated damages, and attorneys' fees and costs.  Century 21 also requests an injunction restraining Defendants from continuing to infringe upon Century 21's trademark rights.

        1.      Damages for Failure to Pay Franchise Fees

Century 21 asserts that as of the time of Defendants' default, they owed $49,632.23 in unpaid royalty and NAF fees under the Franchise Agreement and Notes.  *See* Docket No. 20 at 12; Docket No. 20-16 at ¶ 18.  Century 21 provided a declaration from a Senior Director of  Real Estate Financial Services for Century 21 attesting to this figure, Docket No. 20-16, as well as a copy of a "Custom Account Status Report" which documents in significant detail the amounts due Century 21. *See* Docket No. 20-23; *see also Philip Morris USA*, 219 F.R.D. at 498 (noting that a court "can rely on declarations submitted by the plaintiff" in determining damages).  Specifically, the Custom Account Status Report provides itemized calculations of the precise royalty and NAF fees owed to Century 21 as of December 6, 2013, the sums of which equal the amount sought in this action (*i.e.*, $49,632.23).  Docket No. 20-23.  The Court is satisfied that the amounts listed on the Custom Account Status Report are accurate, and thus finds that Century 21 is entitled to the full amount of past-due franchise fees owed by Defendants as of the date of the termination of their Century 21 franchise.

Century 21 also seeks to recover $9,957.71 in lost profits, which is alleges it is entitled to under Section 19A of the Franchise Agreement.  Section 19A of the Agreement provides that

10

**United States District Court**

For the Northern District of California

1   Century 21 is entitled to recover lost profits in the event of an "early termination" of the Franchise

2   Agreement, which includes a termination "for cause" triggered by Century 21.  Franchise

3   Agreement at 33-34; *see also* Docket No. 20-16 at ¶ 16.  Section 19A further provides that lost

4   profits will be calculated by taking the average monthly royalty and NAF fees payable by the

5   Defendants while they were franchisees, and multiplying that average figure by the number of

6   months remaining on the term of the Franchise Agreement.  *Id.*  That amount is then discounted by

7   8% to account for the present day value of the lost profits award.  *Id.*

8          Here, Century 21 provided sufficient evidence to support its request for lost profits under the

9   Agreement.  Specifically, Century 21 averred that Defendants paid Century 21 average monthly

10   royalties of $1,960.43 during the life of the Agreement, and that 5.26 months were remaining in the

11   term of the Franchise Agreement went it was terminated.  Docket No. 20-16 at ¶ 16.  The Court is

12   sufficiently satisfied that the product of these figures, when discounted to present value as specified

13   in the Agreement, is the amount of lost profits sought here by Century 21 (*i.e.*, $9,957.71).

14          In sum, the Court finds that Century 21 has adequately proven contract damages in the

15   amount of $59,589.94, which is the sum of the franchise fees due and owing in December 2013

16   ($49,632.23) and the lost profits to which Century 21 is entitled as a result of the early termination

17   of the Franchise Agreement ($9,957.71).

18          2.      Damages for Willful Trademark Infringement

19          Century 21 also seeks a damages award for Defendants' ongoing infringement of Century

20   21's trademarks.  At a minimum, Century 21 claims it is entitled to actual damages of $13,247.00.

21   Docket No. 20 at 15.  The Court is sufficiently convinced that Century 21 has, in fact, suffered

22   actual damages for trademark infringement in the amount suggested by Century 21.  As Plaintiff has

23   explained, its actual damages constitute its lost franchise fees for the office that Defendants

24   continued to operate under the Century 21 trademarks without permission.  Century 21 proved that

25   under the Agreement, Defendants were obligated to pay minimum royalty and NAF fees in the

26   amounts of $500 and $519, respectively.  *See* Franchise Agreement at 6 (providing that "there shall

27   be a minimum royalty fee of Five Hundred Dollars ($500) per month"); *see id.* at 11 (providing that

28   Defendants shall pay a minimum NAF fee of $519 per month).  Thus, at a minimum, Century 21

**United States District Court**

For the Northern District of California

1  would have received $1,019 per month from Defendants in exchange for Defendants' use of (among

2  other things) Century 21's trademarks and other intellectual property.  Century 21 has alleged, and

3  the Court must accept as true, that Defendants have continued to use Century 21's trademarks

4  without permission for 13 months, and thus the Court finds that Century 21 is entitled to the full

5  $13,247 in actual damages requested (*i.e.*, $1,019 multiplied by 13).

6         Century 21 further argues that it is entitled to an award of treble damages because

7  Defendants have been wilfully infringing its trademarks since the Agreement was terminated.

8  Where a defendant's trademark infringement is willful, Congress has provided for the recovery of

9  treble damages "absent extenuating circumstances."  *See Sega Enterprises Ltd. v. MAPHIA*, 948 F.

10  Supp. 923, 941 (N.D. Cal. 1996); 15 U.S.C. § 1117(a)-(b).  Here, the Court is sufficiently convinced

11  that Defendants' trademark infringement since the termination of the Agreement is willful.  Century

12  21 provided the Court with a copy of the Termination Letter it sent to Defendants on December 17,

13  2013, indicating that Defendants' franchise was being terminated for breach of the Franchise

14  Agreement.  Docket No. 20-22.  In that letter, Century 21 makes it perfectly clear to Defendants that

15  they "must immediately cease the use of all CENTURY 21® Trademarks," and informs Defendants

16  that an "inspection will be conducted to confirm that you have ceased identifying yourself as a

17  CENTURY 21 franchise and that you are not utilizing the CENTURY 21 name in any respect."  *Id.*

18  The Termination Letter goes on to describe the required "de-identification" procedures laid out in

19  Section 18 of the Franchise Agreement in significant detail.  Furthermore, Century 21 provided

20  copies of two subsequent cease-and-desist letters sent to Defendants regarding their continued

21  unauthorized use of the Century 21 marks.  *See* Docket No. 20-2; Docket No. 20-3.

22         Given the evidence that Defendants were on notice of their obligation to cease using Century

23  21's marks as of December 2013, the Court will award the full amount of requested treble damages:

24  $39,741.00.

25         3.      Injunctive Relief

26         Century 21 also seeks a permanent injunction prohibiting Defendants from continuing to use

27  Century 21's marks without authorization.  As noted above, Century 21 has sufficiently alleged all

28  four elements necessary to obtain a permanent injunction under *eBay*, including that Century 21 will

United States District Court

For the Northern District of California

1    suffer irreparable harm from Defendants' continued unauthorized use of Century 21's marks. *See,*

2    *e.g.*, Docket No. 20-12 at ¶ 16 (explaining that by "failing to de-identify, a former franchisee, such

3    as Defendants, confuse the public into believing that they are in fact still affiliated with Century 21,

4    when such is not the case . . . and that "such unauthorized use prevents Century 21 from exercising

5    any control over such use of its CENTURY 21® Marks, thereby further causing irreparable harm to

6    Century 21's reputation and goodwill"). Moreover, Century 21 notes that the Franchise Agreement

7    expressly provides that Century 21 may obtain a permanent injunction to protect its rights under the

8    Agreement. Franchise Agreement at 34. Thus, the Court concludes that Century 21 is entitled to the

9    entry of a permanent injunction enjoining Defendants from continuing to infringe Century 21's

10   intellectual property.

11              4.       Attorneys' Fees and Costs

12         Century 21 finally requests that it be awarded its attorneys' fees and costs incurred in

13   litigating this lawsuit. Specifically, Century 21 asks for $9,574.75 in attorneys' fees and costs. *See*

14   Docket No. 20-1 at ¶¶ 15-16. Here, the Franchise Agreement expressly provides that:

15              Should either party incur attorneys' fees in order to enforce the terms
                and conditions of this Agreement, including post-term covenants,
16              whether or not a legal action is instituted, the party not in default shall
                be entitled to reimbursement of such attorneys' fees and costs, in
17              addition to other remedies either party may have at law or in equity.
                Should any legal action be instituted in connection with this
18              Agreement, the prevailing party shall be entitled to recover all costs
                and expenses, including attorneys' fees.

19

20   Franchise Agreement at 34; *see also* Docket No. 20-16 at ¶ 22.

21         Given the above contractual provision in the Agreement, Century 21 appears to be entitled to

22   an award of its attorneys' fees and costs litigating this action. Having reviewed Century 21's

23   attorneys' billing records in detail, the Court finds that spending approximately 37.4 billable hours

24   on this case was both reasonable in light of the relative simplicity of this matter, as well as necessary

25   to its effective prosecution. *See* Docket No. 20-1; Docket No. 20-10; Docket No. 20-11; *see also*

26   *The Bd. of Trustees v. Charles B. Harding Construction, Inc.*, No. C-14-1140 EMC, 2014 WL

27   7206890, at *6 (N.D. Cal. Dec. 18, 2014) (finding that 39 hours of billable time to prosecute ERISA

28   default judgment action was reasonable). Further, the Court finds that the hourly rate charged by the

**United States District Court**
For the Northern District of California

1  attorneys ($300 per hour for associates, and $365 per hour for partners) is reasonable in this legal

2  market for attorneys of similar skill and experience. *See, e.g.*, Charles *B. Harding Construction*,

3  2014 WL 7206890, at \*6 (finding that rates between $275 and $325 an hour are reasonable in this

4  market for prosecution of ERISA collection action); *Rosenfeld v. U.S. Dept. of Justice*, 903 F. Supp.

5  2d 859, 878 (N.D. Cal. 2012) (Chen, J.) (finding hourly billing rates between $500 and $700

6  reasonable for successful prosecution of FOIA action). Therefore, the Court awards the requested

7  amount of $9,574.75 in attorneys fees and costs[2] in full.

### III.   CONCLUSION

9       The Court **GRANTS** Century 21's motion for default judgment in the amount of $99,330.94,

10  which includes $49,632.23 for amounts due and owing under the Franchise Agreement and Notes,

11  $9,957.71 for future lost profits under the Agreement, and treble damages for willful trademark

12  infringement in the amount of $39,741.00. The Court further awards Century 21 $9,574.75 in

13  attorneys' fees and costs, for a total monetary award of $108,905.69.[3] The Court also **GRANTS**

14  Century 21's request for injunctive relief, and hereby permanently enjoins Defendants from using or

15  in anyway infringing on Century 21's trademarks or other intellectual property.

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23

24       [2] While Century 21 did not submit an itemized accounting of its costs, the Court has
    reviewed its bills, and determines that the costs claimed, principally for filing this case and service
25  of process, are reasonable and recoverable. *See* Docket No. 20-10; Docket No. 20-11.

26       [3] Century 21 asks the Court to award it the full $108,905.69, "plus interest at the legal rate
    until the judgment is paid in full." Docket No. 20 at 17. The Court will award mandatory post
27  judgment interest at the statutory rate provided in 28 U.S.C. § 1961. *See Barnard v. Theobald*, 721
    F.3d 1069, 1078 (9th Cir. 2013) (noting that the "award of post judgment interest on a district court
28  judgment is mandatory").

United States District Court
For the Northern District of California

1    Century 21 shall serve this Order on Defendants and shall file a proof of service with the

2    Court within seven (7) days from the date of this Order.

3           This order disposes of Docket No. 20.

4

5           IT IS SO ORDERED.

6

7    Dated:  March 6, 2015

8                                                                    _____
                                                                    EDWARD M. CHEN
9                                                                    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15